139 Nev., Advance Opinion 14

IN THE SUPREME COURT OF THE STATE OF NEVADA

ROBERT A. CONRAD, AN
INDIVIDUAL, D/B/A
THISISRENO.COM,
Appellant,
vs.
RENO POLICE DEPARTMENT, A
GOVERNMENTAL SUBDIVISION OF
THE CITY OF RENO,
Respondent.

No. 84389



FILED

JUN 15 2023

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a district court order granting in part and denying in part a petition for a writ of mandamus in a public records dispute. Second Judicial District Court, Washoe County; Kathleen M. Drakulich, Judge.

*Affirmed in part, reversed in part, and remanded.*

Luke A. Busby, Reno,
for Appellant.

Karl S. Hall, City Attorney, and Robert F. Bony and Mark W. Dunagan, Deputy City Attorneys, Reno,
for Respondent.

BEFORE THE SUPREME COURT, EN BANC.

23-18956

## OPINION

By the Court, BELL, J.:

Appellant Dr. Robert Conrad owns and operates ThisIsReno.com, an online news website. In 2021, Conrad filed a petition for a writ of mandamus pursuant to the Nevada Public Records Act (NPRA), challenging the failure of the Reno Police Department (RPD) to disclose certain records. At issue here, RPD refused to disclose an investigative report to Conrad, and RPD redacted officers' faces before disclosing body-worn camera footage. The district court denied Conrad's petition with regard to both issues. Conrad appeals that decision, arguing that the district court erred in finding that the investigative report and the officers' faces as they appeared in RPD's body-worn camera footage were confidential. We reverse in part, regarding the investigative report, and remand for the district court to conduct a more individualized determination based on the content of the full report, either through in camera review or by other means deemed appropriate by the district court judge. We affirm the district court's decision regarding the redactions to the body-worn camera footage.

### FACTS AND PROCEDURAL HISTORY

ThisIsReno.com serves as "a community-focused online news source for the greater Reno, Nevada[,] area" according to Dr. Robert Conrad, who owns and operates the website. In that capacity, Conrad made a number of public records requests to the Reno Police Department in 2020. The requests at issue on appeal involve the investigation of a Washoe County Sheriff's Office sergeant and the sweep of a homeless encampment by RPD. In response to Conrad's requests, RPD refused to disclose the investigative report regarding the sergeant. RPD did provide body-worn

SUPREME COURT
OF
NEVADA

(O) 1947A

camera footage of the sweep of the homeless encampment, but it redacted the faces of the officers.

*The investigative report*

RPD began investigating former Sergeant Dennis Carry in 2018, after the sergeant's wife reached out to the Washoe County Sheriff's Office expressing concerns about Carry's erratic behavior. The investigation ultimately led to Carry's arrest in 2021. At that time, Detective Sergeant Trenton Johnson of RPD completed a declaration in support of Carry's arrest, which was filed in the Reno Justice Court. Johnson's declaration contained information derived from the full investigative report.

In 2020, prior to Carry's arrest, Conrad filed a public records request with RPD for the full investigative report on Carry. RPD refused to disclose the report because Carry was still under investigation. In its response to Conrad, RPD cited *Donrey of Nevada, Inc. v. Bradshaw*, 106 Nev. 630, 798 P.2d 144 (1990). After Carry's arrest, RPD continued to deny Conrad's subsequent requests. In doing so, RPD restated its initial reasoning and added that disclosure of the entire investigative report would compromise Carry's right to receive a fair trial, reveal RPD's confidential investigative techniques, and disclose the identity of witnesses. In each correspondence RPD sent to Conrad refusing to disclose the report, RPD cited *Bradshaw* and other cases from this court.

*The body-worn camera footage*

On June 3, 2020, RPD conducted a sweep of a homeless encampment under a Reno highway overpass. Conrad arrived at the scene to report after receiving a tip that RPD Officer Ryan Gott would be at the sweep. Conrad believed that Officer Gott previously posted denigrating comments online about an advocate for homeless rights. RPD reportedly

refused to allow Conrad access into the encampment. The next day, Conrad submitted a public records request to RPD for Officer Gott's body-worn camera footage.

In response to the request, RPD provided Conrad with a compact disc containing the body-worn camera footage taken by Officer Gott at the sweep. The footage provided shows the faces of homeless individuals and the name badge of at least one officer; however, the faces of the officers were blurred out.

*Petition for writ of mandamus*

In 2021, Conrad filed a petition for a writ of mandamus before the district court in Washoe County. The petition sought disclosure of various materials under the Nevada Public Records Act (NPRA), including the Carry report and the unredacted Gott video. Conrad claimed that RPD had both improperly denied and failed to timely respond to Conrad's public records requests. The district court granted part of Conrad's petition with regard to certain NPRA violations not at issue here, but it denied Conrad's petition as to the Carry report and the unredacted Gott video.

With regard to the Carry report, RPD asserted that the investigative report was confidential under *Bradshaw*. RPD also provided an affidavit from Sergeant Johnson. Sergeant Johnson attested that the full investigative file contained more information than he had included in the declaration to the Reno Justice Court. According to him, the full investigative report contained, but was "not limited to, relevant emails, reports, documents, witness statements, interviews of witnesses and other involved parties." Sergeant Johnson opined that release of this information to the public during Carry's ongoing prosecution could impede the remainder of the investigation, increase the likelihood of prejudicing a jury, taint the original testimony of certain witnesses, and stymie potential

 

efforts by Carry's defense counsel to suppress any evidence contained within the investigative file. Sergeant Johnson's one-and-one-half-page affidavit provided no specific detail and no information regarding why redaction would be ineffective.

After a hearing, the district court denied Conrad's petition with respect to the disclosure of the full investigative report. The district court found that the *Bradshaw* balancing test favored nondisclosure of the Carry investigative report because (1) the criminal proceeding against Carry was ongoing, implicating Carry's ability to receive a fair trial; (2) the report contained confidential sources; and (3) the report contained investigative techniques. The district court based these findings on Sergeant Johnson's affidavit. The district court did not review the investigative report in camera or take other evidence regarding the content of the report, even though counsel for RPD suggested during the hearing that in camera review might be appropriate.

With regard to the Gott body-worn camera video, RPD argued that the officers' faces as they appear in body-worn camera footage were confidential under NRS 289.025(1) as photographs in the possession of a law enforcement agency. RPD also claimed a nontrivial privacy interest in "avoiding public disparagement, ridicule, and harassment" that outweighed the public's interest in disclosure of the full body-worn camera footage.

The district court denied Conrad's request for the unredacted video footage. The court found that while body-worn camera footage constitutes a public record under NRS 289.830(2), an officer's photograph is confidential under NRS 289.025(1). The district court applied this protection to the faces of officers in the body-worn camera footage, reasoning that

[p]etitioner provided this Court with 49 pages of screen grabs from BWC [body-worn camera footage] (exhibits 4-7). . . . The result of these screengrabs are clearly photos of an officer that would be subject to protection under NRS 289.025(1). . . . [T]hat an officer shall not receive the protection of NRS 289.025(1) for BWC but would be able to receive such protections once a screengrab was made would produce illogical results.

The district court also reasoned that "a video is merely a compilation of photos" and is therefore subject to the confidentiality provisions that certain photographs receive under NRS 289.025(1).

## DISCUSSION

The Nevada Public Records Act, codified as NRS Chapter 239, governs public access to government records. Under the NPRA, "unless otherwise declared by law to be confidential, all public books and public records of a governmental entity must be open at all times during office hours to inspection by any person." NRS 239.010(1). "The purpose of this chapter is to foster democratic principles . . . ." NRS 239.001(1). Consequently, "[t]he provisions of this chapter must be construed liberally to carry out this important purpose." NRS 239.001(2). Further, "[a]ny exemption, exception or balancing of interests which limits or restricts access to public books and records by members of the public must be construed narrowly." NRS 239.001(3).

If a governmental entity wishes to prevent the disclosure of a record in the entity's custody, the NPRA charges the entity with the "burden of proving by a preponderance of the evidence that the public book or record, or a part thereof, is confidential." NRS 239.0113(2). As this court has explained,

[u]nder the NPRA, government-generated records are presumptively open to public inspection. This presumption may be rebutted either by an explicit statutory provision making a particular type of record confidential or, . . . by a "broad balancing of the interests involved," where the government must prove that "its interest in nondisclosure clearly outweighs the public's interest in access."

*Las Vegas Metro. Police Dep't v. Las Vegas Review-Journal*, 136 Nev. 733, 735, 478 P.3d 383, 386 (2020) (quoting *Reno Newspapers, Inc. v. Gibbons*, 127 Nev. 873, 880, 266 P.3d 623, 628 (2011)) (internal citations omitted).

*The district court abused its discretion by denying Conrad's petition with respect to the Carry investigative report without individualized findings regarding the redacted material*

We consider here whether the district court properly denied disclosure of the investigative report under the balancing of interests tests. Generally, "[w]e review a district court's order denying a petition for a writ of mandamus for an abuse of discretion." *Republican Att'ys Gen. Ass'n v. Las Vegas Metro. Police Dep't (RAGA)*, 136 Nev. 28, 30, 458 P.3d 328, 331 (2020). Further, specifically, when a district court conducts a balancing of interests to determine whether limitations on disclosure should apply to materials requested under the NPRA, "we review [that] portion of the order for an abuse of discretion." *Clark Cty. Sch. Dist. v. Las Vegas Review-Journal*, 134 Nev. 700, 704-05, 429 P.3d 313, 318 (2018).

In *RAGA*, this court determined that the district court abused its discretion in denying a petition made under the NPRA because it had failed to "conduct an individualized exercise of discretion" regarding each requested record. 136 Nev. at 37, 458 P.3d at 335 (internal quotation marks omitted). Specifically, the district court in that case abused its discretion because it had failed to view every record at issue "or make any specific findings as to whether these records contain[ed]

confidential . . . information." *Id.* *RAGA* requires district courts to consider each record on an individual basis and make findings regarding claims of confidentiality. *Id.* at 37, 458 P.3d at 335. *RAGA* did not create a bright-line rule mandating in camera review of records in every NPRA dispute, nor do we here. Under the circumstances at hand, however, the district court had insufficient information to properly balance the concerns.

Additionally, the burden of proving that a record is confidential lies with the governmental entity arguing against disclosure. NRS 239.0113(2). The government may not avoid a lawful public records request by simply providing a blanket statement of factors. *See generally Bradshaw*, 106 Nev. 630, 798 P.2d 144 (concluding that a balancing test must be used to determine whether public policy considerations outweigh privacy and/or security concerns). A substantial body of caselaw has been developed since *Bradshaw* concerning the balancing test that courts must conduct during petitions regarding NPRA requests. *Gibbons*, 127 Nev. at 878-79, 266 P.3d at 626-27 (providing an overview of NPRA jurisprudence). And we recently held in *Las Vegas Review-Journal, Inc. v. Las Vegas Metropolitan Police Department*, 139 Nev., Adv. Op. 8, 526 P.3d 724, 735-36 (2023), that the 2007 amendments to the NPRA require courts to apply the balancing test in *Bradshaw* to favor the public's interest in access over the governmental entity's interest in nondisclosure when weighing the respective interests.

SUPREME COURT
OF
NEVADA

(O) 1947A

8

Placing the burden on the entity is a logical requirement. Often, as here, the entity arguing against disclosure has exclusive custody over the records it seeks to withhold, thus limiting the other party's ability to dispute any conclusions regarding the contents of the documents. *Gibbons*, 127 Nev. at 882, 266 P.3d at 629 (explaining that the burden of proof under the NPRA is on the government entity).

Before the district court, RPD provided only Sergeant Johnson's affidavit as evidence. The affidavit does little more than assert conclusions about the effect of disclosing the full investigative report. These generalized assertions do not explain why the records are confidential or why the records could not be redacted.

The district court here did not err in relying on *Bradshaw*, but the district court abused its discretion in determining that the balancing test weighed in favor of RPD without making sufficiently specific findings regarding the material in question.

*The district court correctly denied Conrad's petition with respect to the body-worn camera footage*

The next issue before us is whether law enforcement agencies may redact images of officer faces from body-worn camera recordings. This court reviews issues of statutory interpretation de novo. *Young v. Nev. Gaming Control Bd.*, 136 Nev. 584, 586, 473 P.3d 1034, 1036 (2020). "When reviewing de novo, [this court] will interpret a statute or regulation by its plain meaning unless the statute or regulation is ambiguous, the plain meaning would provide an absurd result, or the interpretation clearly was not intended." *Id.* (internal quotation marks and citations omitted).

The language of the two statutory provisions involved here is unambiguous. NRS 289.830(1) requires peace officers "who routinely

interact with the public to wear a portable event recording device while on duty." The statute further provides that

> [a]ny record made by a portable event recording device pursuant to this section is a public record which may be:
>
> (a) Requested only on a per incident basis; and
>
> (b) Available for inspection only at the location where the record is held if the record contains confidential information that may not otherwise be redacted.

NRS 289.830(2). At the same time, NRS 289.025(1) provides that "the home address and any photograph of a peace officer in the possession of a law enforcement agency are not public information and are confidential."

Any record produced from body-worn camera footage is subject to both the NPRA and any confidentiality provisions limiting public disclosure. *RAGA*, 136 Nev. at 34, 458 P.3d at 333 (clarifying that "as a public record, bodycam footage is subject to the NPRA. The NPRA, however, expressly yields to confidentiality provisions."); *see also* NRS 239.010(1) (clarifying that the NPRA makes records public "unless otherwise declared by law to be confidential"). Reading the term "photograph" in context supports the conclusion that an officer's face as it appears in body-worn camera footage is confidential under NRS 289.025(1). *See Allstate Ins. Co. v. Fackett*, 125 Nev. 132, 138, 206 P.3d 572, 576 (2009) (explaining that the court "read[s] statutes within a statutory scheme harmoniously with one another"). NRS 289.025(1) protects photographs of officers and their home addresses from disclosure. The common element between these two records is not a technical one; they are both forms of personal identification.

Further, NRS 289.025(1)'s provision making photographs of a peace officer in the possession of law enforcement confidential is more specific than NRS 289.830(2)'s provision making "[a]ny record" open to public inspection. Therefore, NRS 289.025(1) governs. *See Szydel v. Markman*, 121 Nev. 453, 457, 117 P.3d 200, 202-03 (2005) ("When two statutes are clear and unambiguous but conflict with each other when applied to a specific factual situation . . . we will attempt to read the statutory provisions in harmony, provided that this interpretation does not violate legislative intent.").

The plain language of the two statutes does not conflict and in fact creates a harmonious scheme in which records derived from body-worn camera footage are public records subject to other statutory confidentiality provisions. *See Clark Cty. Office of Coroner/Medical Examiner v. Las Vegas Review-Journal*, 136 Nev. 44, 48, 458 P.3d 1048, 1052 (2020) (explaining that "this court will interpret a rule or statute in harmony with other rules or statutes") (internal quotation marks omitted).

We conclude the district court did not err in interpreting NRS 289.025(1) as limiting NRS 289.830(2). RPD appropriately redacted body camera footage to protect the confidential nature of the information pursuant to statute.

*CONCLUSION*

We reverse the district court's order insofar as it found that the Carry investigative report is confidential under *Bradshaw* and remand for the court to conduct an individualized determination based on the content of the full report, either through in camera review or by other means deemed appropriate by the district court judge. We affirm the district

court's order to the extent that it found that redacting officers' faces in body-worn camera footage is appropriate and denied relief related thereto, as the images are confidential under NRS 289.025(1).

_____, J.
Bell

We concur:

_____, C.J.
Stiglich

_____, J.
Cadish

_____, J.
Pickering

_____, J.
Herndon

_____, J.
Lee

_____, J.
Parraguirre